**UNITED STATES BANKRUPTCY COURT**
**WESTERN DISTRICT OF NORTH CAROLINA**
**CHARLOTTE DIVISION**

| | |
|---|---|
| IN RE:<br>TIMOTHY EARLE NEWELL<br>CHRISTIE DIANNE NEWELL<br>*(AKA Christie Rochester Newell)*<br>DEBTORS | CASE NO. 18-31850<br>CHAPTER 7 |

**MOTION FOR RELIEF FROM AUTOMATIC STAY (PROPERTY)**
**OR IN THE ALTERNATIVE ADEQUATE PROTECTION**
{No Protest Motion}

Pacific Union Financial, LLC ("Creditor"), a secured creditor in the above-captioned case, hereby moves this Court, pursuant to 11 U.S.C. § 362, for relief from the automatic stay or in the alternative for adequate protection with respect to certain property having an address of 4006 Secrest Short Cut Road, Monroe, North Carolina 28110 (the "Property"), for all purposes allowed by the Note (defined below), the Deed of Trust (defined below), and applicable law, including but not limited to the right to foreclose. In further support of this Motion, Creditor respectfully states:

1. On or about December 13, 2018 (the "Petition Date"), Timothy Earle Newell and Christie Dianne Newell (the "Debtors") filed a petition under Chapter 7 of Title 11 of the U.S. Code.

2. This Court has jurisdiction to hear this matter and enter a final order pursuant to 28 U.S.C. §§ 157 and 1334; and 11 U.S.C. § 362.

3. On or about September 17, 2012, Christie R. Newell and Nicholas L. Rochester, Jr. executed that certain Note in the original principal amount of $150,228.00 (the "Note"). A copy of the Note is attached hereto as Exhibit "A."

4. Pursuant to that certain Deed of Trust recorded in the Union County, North Carolina Register of Deeds in Book 05828 at Page 0390 (the "Deed of Trust"), all amounts owed under and with respect to the Note (the "Obligation") are secured by the Property. A copy of the Deed of Trust is attached hereto as Exhibit "B."

5. Mr. Cooper services the Obligation. In the event the automatic stay is modified, this case dismisses, and/or the debtor obtains a discharge and a foreclosure action is commenced on the Property, the foreclosure will be conducted in the name of Pacific Union Financial, LLC. Creditor is the original mortgagee or beneficiary or the assignee of the security instrument for the referenced loan. Creditor, directly or through an agent, has possession of the Note.

6. Upon information and belief, the Property is being surrendered.

7. The estimated market value of the Property is $177,000.00. The basis for such valuation is Schedule A.

8. Upon information and belief, the payoff amount as of February 1, 2019 is $182,974.67.

9. Cause exists for relief from the automatic stay pursuant to 11 U.S.C. § 362(d)(1) because Creditor's interest in the Property is not adequately protected.

WHEREFORE, Creditor prays that this Court issue an Order terminating or modifying the stay and granting the following:

1. Relief from the stay for all purposes allowed by the Note, the Deed of Trust, and applicable law, including but not limited to allowing Creditor (and any successors or assigns) to proceed under applicable non-bankruptcy law to enforce its remedies to foreclose upon and obtain possession of the Property and any and all other collateral pledged under the Deed of Trust.

2. That the 14-day stay described by Bankruptcy Rule 4001(a)(3) be waived.

3. Creditor specifically requests permission to communicate with the Debtors and Debtors' counsel to the extent necessary to comply with applicable nonbankruptcy law.

4. In the alternative, Creditor requests that this Court enter an order providing Creditor with adequate protection of its interests in the Property.

5. For such other relief as the Court deems proper.

This 14th day of March, 2019.

/s/ Neil D Jonas
Neil D Jonas (N.C. Bar No. 31622)
Attorney for Creditor
8757 Red Oak Blvd., Suite 150
Charlotte, NC 28217
704-369-0676
ncbkr@brockandscott.com

**UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION**

| | |
|---|---|
| IN RE:<br>TIMOTHY EARLE NEWELL<br>CHRISTIE DIANNE NEWELL<br>*(AKA Christie Rochester Newell)*<br>　　　　　　　　　DEBTORS | CASE NO. 18-31850<br>CHAPTER 7 |

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies under penalty of perjury that he/she is over eighteen (18) years of age and that the MOTION FOR RELIEF FROM AUTOMATIC STAY AND NOTICE OF MOTION in the above captioned case were this day served upon the below named persons by mailing, postage prepaid, first class mail a copy of such instrument to each person(s), parties, and/or counsel at the addresses shown below:

Timothy Earle Newell
3827 Helmsville Road
Monroe, NC 28110

Christie Dianne Newell
3827 Helmsville Road
Monroe, NC 28110

Marcus D Crow
315-B North Main Street
Monroe, NC 28112

Frederick L. Henderson
518 S. New Hope Rd.
Gastonia, NC 28054

This 14th day of March, 2019.

　　　　　　　　　　　　　　　　　　　　　/s/ Neil D Jonas
　　　　　　　　　　　　　　　　　　　　　Neil D Jonas
　　　　　　　　　　　　　　　　　　　　　8757 Red Oak Blvd., Suite 150
　　　　　　　　　　　　　　　　　　　　　Charlotte, NC 28217
　　　　　　　　　　　　　　　　　　　　　704-369-0676
　　　　　　　　　　　　　　　　　　　　　bankruptcy@brockandscott.com

## UNITED STATES BANKRUPTCY COURT
## WESTERN DISTRICT OF NORTH CAROLINA
## CHARLOTTE DIVISION

IN RE:
TIMOTHY EARLE NEWELL
CHRISTIE DIANNE NEWELL
*(AKA Christie Rochester Newell)*
                DEBTORS

CASE NO.  18-31850
CHAPTER 7

### NOTICE OF MOTION AND OPPORTUNITY FOR HEARING
{No Protest Motion Pursuant to 11 U.S.C. § 362}

### TO THE DEBTOR, DEBTOR'S ATTORNEY, TRUSTEE AND ALL PARTIES IN INTEREST

    **THIS NOTICE IS HEREBY GIVEN** of a Motion for Relief from Automatic Stay filed simultaneously herewith in the above-captioned case, a copy of which is attached to herein, and;

    **NOTICE IS FURTHER GIVEN** that this motion may be allowed pursuant to U.S.C. § 362(e) without a hearing or further notice provided no response and request for a hearing is made by the parties in interest in writing to the **U.S. Bankruptcy Court Clerk of Court 401 West Trade Street Room 111, Charlotte, NC 28202** within FOURTEEN (14) DAYS from the date of this notice, and;

    **NOTICE IS FURTHER GIVEN** that if a response and request for a hearing is filed by a party in interest named herein, in writing within the time indicated, a hearing will be conducted in the **Charlotte Division of the U.S. Bankruptcy Court Western District of North Carolina, 401 West Trade Street Room C1-4, Charlotte, NC 28202 on April 8, 2019 at 9:30 AM.**  If no response for a hearing is timely filed, this Court may rule on the Motion exparte without further notice.  Any party requesting a hearing shall appear at the hearing in support of such an objection or may be assessed with costs of Court.

This 14th day of March, 2019.

                              Brock and Scott, PLLC

                              /s/ Neil D Jonas
                              Neil D Jonas (N.C. Bar No. 31622)
                              8757 Red Oak Blvd., Suite 150
                              Charlotte, NC 28217
                              704-369-0676
                              bankruptcy@brockandscott.com

EXHIBIT A

# NOTE

Multistate

LOAN #:
FHA Case No.
MIN:

SEPTEMBER 17, 2012　　　　　　　ASHEBORO,　　　　　　　　NORTH CAROLINA
[Date]　　　　　　　　　　　　　　　[City]　　　　　　　　　　　　　　[State]

4006 Secrest Shortcut Rd, Monroe, NC 28110
[Property Address]

### 1. PARTIES

"Borrower" means each person signing at the end of this Note, and the person's successors and assigns. "Lender" means **WOLFE FINANCIAL, INC., A CORPORATION.**

and its successors and assigns.

### 2. BORROWER'S PROMISE TO PAY; INTEREST

In return for a loan received from Lender, Borrower promises to pay the principal sum of ******ONE HUNDRED FIFTY THOUSAND TWO HUNDRED TWENTY EIGHT AND NO/100****************************** Dollars (U.S. $150,228.00　　), plus interest, to the order of Lender. Interest will be charged on unpaid principal, from the date of disbursement of the loan proceeds by Lender, at the rate of **FOUR**　　　　　　　　　　　percent (　4.000%　) per year until the full amount of principal has been paid.

### 3. PROMISE TO PAY SECURED

Borrower's promise to pay is secured by a mortgage, deed of trust or similar security instrument that is dated the same date as this Note and called the "Security Instrument." The Security Instrument protects the Lender from losses which might result if Borrower defaults under this Note.

### 4. MANNER OF PAYMENT

(A) Time

Borrower shall make a payment of principal and interest to Lender on the　　　1ST　　　day of each month beginning on　NOVEMBER 1, 2012.　　　Any principal and interest remaining on the　1ST　　　day of **OCTOBER, 2042**　　will be due on that date, which is called the "Maturity Date."

(B) Place

Payment shall be made at
191 N NC HWY 42 N
ASHEBORO, NC 27203

or at such place as Lender may designate in writing by notice to Borrower.

(C) Amount

Each monthly payment of principal and interest will be in the amount of U.S.　$717.21.　This amount will be part of a larger monthly payment required by the Security Instrument, that shall be applied to principal, interest and other items in the order described in the Security Instrument.

(D) Allonge to this Note for payment adjustments

If an allonge providing for payment adjustments is executed by Borrower together with this Note, the covenants of the allonge shall be incorporated into and shall amend and supplement the covenants of this Note as if the allonge were a part of this Note.

[Check applicable box]　　☐ Graduated Payment Allonge　　☐ Growing Equity Allonge
　　　　　　　　　　　　☐ Other [specify]

### 5. BORROWER'S RIGHT TO PREPAY

Borrower has the right to pay the debt evidenced by this Note, in whole or in part, without charge or penalty, on the first day of any month. Lender shall accept prepayment on other days provided that borrower pays interest on the amount prepaid for the remainder of the month to the extent required by Lender and permitted by regulations of the Secretary. If Borrower makes a partial prepayment, there will be no changes in the due date or in the amount of the monthly payment unless Lender agrees in writing to those changes.

### 6. BORROWER'S FAILURE TO PAY

(A) Late Charge for Overdue Payments

If Lender has not received the full monthly payment required by the Security Instrument, as described in Paragraph 4(C) of this Note, by the end of　　15　　calendar days after the payment is due, Lender may collect a late charge in the amount of　**FOUR**　　　　　　　percent (　4.000%　) of the overdue amount of each payment.

(B) Default

If Borrower defaults by failing to pay in full any monthly payment, then Lender may, except as limited by regulations of the Secretary in the case of payment defaults, require immediate payment in full of the principal balance remaining due and all accrued interest. Lender may choose not to exercise this option without waiving its rights in the event of any subsequent default. In many circumstances regulations issued by the Secretary will limit Lender's rights to require immediate payment in full in the case of payment defaults. This Note does not authorize acceleration when not permitted by HUD regulations. As used in this Note, "Secretary" means the Secretary of Housing and Urban Development or his or her designee.

**(C) Payment of Costs and Expenses**

LOAN #

If Lender has required immediate payment in full, as described above, Lender may require Borrower to pay costs and expenses including reasonable and customary attorneys' fees for enforcing this Note to the extent not prohibited by applicable law. Such fees and costs shall bear interest from the date of disbursement at the same rate as the principal of this Note.

**7. WAIVERS**

Borrower and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require Lender to demand payment of amounts due. "Notice of dishonor" means the right to require Lender to give notice to other persons that amounts due have not been paid.

**8. GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to Borrower under this Note will be given by delivering it or by mailing it by first class mail to Borrower at the property address above or at a different address if Borrower has given Lender a notice of Borrower's different address.

Any notice that must be given to Lender under this Note will be given by first class mail to Lender at the address stated in Paragraph 4(B) or at a different address if Borrower is given a notice of that different address.

**9. OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. Lender may enforce its rights under this Note against each person individually or against all signatories together. Any one person signing this Note may be required to pay all of the amounts owed under this Note.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Note.

_____ (Seal)
Christie R Newell

_____ (Seal)
Nicholas L Rochester Jr

**ALLONGE TO PROMISSORY NOTE:**

For the purpose of further endorsement of the following described Note, this allonge is fixed and becomes a permanent part of said Note:

Loan Number: ▮▮▮▮▮▮

Note Date: September 17, 2012

Original Principal Balance: $150,228.00

Borrower(s) Names: Christie R Newell
Nicholas L Rochester Jr

Property Address: 4006 Secrest Shortcut Rd
Monroe, NC 28110

Without recourse, Pay to the Order of:

Pacific Union Financial, LLC

Correspondent:   Wolfe Financial, Inc., A Corporation
191 H NC Hwy 42 North
Asheboro, NC 27203

By:   _____

Typed Name:   William K Wolfe

Title:   President

|  | FILED<br>UNION COUNTY, NC<br>CRYSTAL CRUMP<br>REGISTER OF DEEDS |  |
|---|---|---|
| FILED | Sep 19, 2012 | |
| AT | 02:08 pm | |
| BOOK | 05828 | |
| START PAGE | 0390 | |
| END PAGE | 0396 | |
| INSTRUMENT # | 29617 | |
| EXCISE TAX | (None) | |
| AH | | |

# EXHIBIT B

―――――――――――――― [Space Above This Line For Recording Data] ――――――――――――――

## DEED OF TRUST

```
WOLFE FINANCIAL, INC.
FINAL DOCUMENT DEPARTMENT
191 H NC HWY 42 N
ASHEBORO, NC 27203
```

This instrument was prepared by: R.Asti

*Pacific Union Financial* (handwritten)

State of North Carolina
LOAN #: ▮▮▮▮

FHA Case No. ▮▮▮▮

MIN: ▮▮▮▮

THIS DEED OF TRUST ("Security Instrument") is made on    SEPTEMBER 17, 2012.    The Grantor is
CHRISTIE R NEWELL AND TIMOTHY E NEWELL, WIFE AND HUSBAND, AND NICHOLAS L ROCHESTER JR
AND DORIS C ROCHESTER, WIFE AND HUSBAND

("Borrower").
The trustee is   MICHAEL BURNS, ATTORNEY AT LAW, BURNS AND BELA, LLP

("Trustee").
**"MERS"** is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. **MERS is the beneficiary under this Security Instrument.** MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, Michigan 48501-2026, tel. (888) 679-MERS.   WOLFE FINANCIAL, INC., A CORPORATION

("Lender") is organized and
existing under the laws of   NORTH CAROLINA,                                                                                       and has an address of
191 H NC HWY 42 N, ASHEBORO, NC 27203.

Borrower owes Lender the principal sum of ***ONE HUNDRED FIFTY THOUSAND TWO HUNDRED TWENTY EIGHT
AND NO/100******************************************* Dollars (U.S.      $150,228.00 ).
This debt is evidenced by Borrower's note dated the same date as this Security Instrument ("Note"), which provides for

FHA North Carolina Deed of Trust - 4/96
Online Documents, Inc.                      Page  1  of  6

LOAN #:

BY SIGNING BELOW, Borrower accepts and agrees to the terms contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

Witnesses: _____

_____ (SEAL)
Christie R Newell

_____
_____ (SEAL)
Timothy E Newell

_____ (SEAL)
Nicholas L Rochester Jr

_____ (SEAL)
Doris C Rochester

State of NORTH CAROLINA
County of UNION

The foregoing instrument was acknowledged before me this September 17 2012 (date) by Christie R Newell AND Timothy E Newell AND Nicholas L Rochester Jr AND Doris C Rochester (name of person acknowledged).

_____
(Signature of Person Taking Acknowledgement)

Notary Public _____ (Title or Rank)

_____ (Serial Number, if any)

Commission Expires 10-21-2014

LOAN #:

monthly payments, with the full debt, if not paid earlier, due and payable on OCTOBER 1, 2042. The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest, and all renewals, extensions and modifications of the Note; (b) the payment of all other sums, with interest, advanced under paragraph 7 to protect the security of this Security Instrument; and (c) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to the Trustee and Trustee's successors and assigns, in trust, with power of sale, the following described property located in      Union
County, North Carolina:
SEE LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF AS EXHIBIT
"A".
APN #:

which has the address of  4006 Secrest Shortcut Rd, Monroe,
[Street, City],
North Carolina   28110          ("Property Address");
[Zip Code]

   TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

   BORROWER COVENANTS that Borrower is lawfully seized of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

   THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

   Borrower and Lender covenant and agree as follows:

UNIFORM COVENANTS.
   **1. Payment of Principal, Interest and Late Charge.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and late charges due under the Note.
   **2. Monthly Payment of Taxes, Insurance and Other Charges.** Borrower shall include in each monthly payment, together with the principal and interest as set forth in the Note and any late charges, a sum for (a) taxes and special assessments levied or to be levied against the Property, (b) leasehold payments or ground rents on the Property, and (c) premiums for insurance required under paragraph 4. In any year in which the Lender must pay a mortgage insurance premium to the Secretary of Housing and Urban Development ("Secretary"), or in any year in which such premium would have been required if Lender still held the Security Instrument, each monthly payment shall also include either: (i) a sum for the annual mortgage insurance premium to be paid by Lender to the Secretary, or (ii) a monthly charge instead of a mortgage insurance premium if this Security Instrument is held by the Secretary, in a reasonable amount to be determined by the Secretary. Except for the monthly charge by the Secretary, these items are called "Escrow Items" and the sums paid to Lender are called "Escrow Funds."
   Lender may, at any time, collect and hold amounts for Escrow Items in an aggregate amount not to exceed the maximum amount that may be required for Borrower's escrow account under the Real Estate Settlement Procedures Act of 1974, 12 U.S.C. Section 2601 et seq. and implementing regulations, 24 CFR Part 3500, as they may be amended from time to time ("RESPA"), except that the cushion or reserve permitted by RESPA for unanticipated disbursements or disbursements before the Borrower's payments are available in the account may not be based on amounts due for the mortgage insurance premium.
   If the amounts held by Lender for Escrow Items exceed the amounts permitted to be held by RESPA, Lender shall account to Borrower for the excess funds as required by RESPA. If the amounts of funds held by Lender at any time is not sufficient to pay the Escrow Items when due, Lender may notify the Borrower and require Borrower to make up the shortage as permitted by RESPA.
   The Escrow Funds are pledged as additional security for all sums secured by this Security Instrument. If Borrower tenders to Lender the full payment of all such sums, Borrower's account shall be credited with the balance remaining

LOAN #:

for all installment items (a), (b), and (c) and any mortgage insurance premium installment that Lender has not become obligated to pay to the Secretary, and Lender shall promptly refund any excess funds to Borrower. Immediately prior to a foreclosure sale of the Property or its acquisition by Lender, Borrower's account shall be credited with any balance remaining for all installments for items (a), (b), and (c).

3. **Application of Payments.** All payments under paragraphs 1 and 2 shall be applied by Lender as follows:

First, to the mortgage insurance premium to be paid by Lender to the Secretary or to the monthly charge by the Secretary instead of the monthly mortgage insurance premium;

Second, to any taxes, special assessments, leasehold payments or ground rents, and fire, flood and other hazard insurance premiums, as required;

Third, to interest due under the Note;

Fourth, to amortization of the principal of the Note; and

Fifth, to late charges due under the Note.

4. **Fire, Flood and Other Hazard Insurance.** Borrower shall insure all improvements on the Property, whether now in existence or subsequently erected, against any hazards, casualties, and contingencies, including fire, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. Borrower shall also insure all improvements on the Property, whether now in existence or subsequently erected, against loss by floods to the extent required by the Secretary. All insurance shall be carried with companies approved by Lender. The insurance policies and any renewals shall be held by Lender and shall include loss payable clauses in favor of, and in a form acceptable to, Lender.

In the event of loss, Borrower shall give Lender immediate notice by mail. Lender may make proof of loss if not made promptly by Borrower. Each insurance company concerned is hereby authorized and directed to make payment for such loss directly to Lender, instead of to Borrower and to Lender jointly. All or any part of the insurance proceeds may be applied by Lender, at its option, either (a) to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order in paragraph 3, and then to prepayment of principal, or (b) to the restoration or repair of the damaged Property. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments which are referred to in paragraph 2, or change the amount of such payments. Any excess insurance proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

In the event of foreclosure of this Security Instrument or other transfer of title to the Property that extinguishes the indebtedness, all right, title and interest of Borrower in and to insurance policies in force shall pass to the purchaser.

5. **Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within sixty days after the execution of this Security Instrument (or within sixty days of a later sale or transfer of the Property) and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender determines that requirement will cause undue hardship for Borrower, or unless extenuating circumstances exist which are beyond Borrower's control. Borrower shall notify Lender of any extenuating circumstances. Borrower shall not commit waste or destroy, damage or substantially change the Property or allow the Property to deteriorate, reasonable wear and tear excepted. Lender may inspect the Property if the Property is vacant or abandoned or the loan is in default. Lender may take reasonable action to protect and preserve such vacant or abandoned Property. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and fee title shall not be merged unless Lender agrees to the merger in writing.

6. **Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in place of condemnation, are hereby assigned and shall be paid to Lender to the extent of the full amount of the indebtedness that remains unpaid under the Note and this Security Instrument. Lender shall apply such proceeds to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order provided in paragraph 3, and then to prepayment of principal. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments, which are referred to in paragraph 2, or change the amount of such payments. Any excess proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

7. **Charges to Borrower and Protection of Lender's Rights in the Property.** Borrower shall pay all governmental or municipal charges, fines and impositions that are not included in paragraph 2. Borrower shall pay these obligations on time directly to the entity which is owed the payment. If failure to pay would adversely affect Lender's interest in the Property, upon Lender's request Borrower shall promptly furnish to Lender receipts evidencing these payments.

If Borrower fails to make these payments or the payments required by paragraph 2, or fails to perform any other covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, for condemnation or to enforce laws or regulations), then Lender may do and pay whatever is necessary to protect the value of the Property and Lender's rights in the Property, including payment of taxes, hazard insurance and other items mentioned in paragraph 2.

Any amounts disbursed by Lender under this paragraph shall become an additional debt of Borrower and be secured by this Security Instrument. These amounts shall bear interest from the date of disbursement, at the Note rate, and at the option of Lender, shall be immediately due and payable.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject

LOAN #:

to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

8. **Fees.** Lender may collect fees and charges authorized by the Secretary.

9. **Grounds for Acceleration of Debt.**

   (a) **Default.** Lender may, except as limited by regulations issued by the Secretary, in the case of payment defaults, require immediate payment in full of all sums secured by this Security Instrument if:

   (i) Borrower defaults by failing to pay in full any monthly payment required by this Security Instrument prior to or on the due date of the next monthly payment, or

   (ii) Borrower defaults by failing, for a period of thirty days, to perform any other obligations contained in this Security Instrument.

   (b) **Sale Without Credit Approval.** Lender shall, if permitted by applicable law (including Section 341(d) of the Garn-St. Germain Depository Institutions Act of 1982, 12 U.S.C. 1701j-3(d)) and with the prior approval of the Secretary, require immediate payment in full of all sums secured by this Security Instrument if:

   (i) All or part of the Property, or a beneficial interest in a trust owning all or part of the Property, is sold or otherwise transferred (other than by devise or descent), and

   (ii) The Property is not occupied by the purchaser or grantee as his or her principal residence, or the purchaser or grantee does so occupy the Property but his or her credit has not been approved in accordance with the requirements of the Secretary.

   (c) **No Waiver.** If circumstances occur that would permit Lender to require immediate payment in full, but Lender does not require such payments, Lender does not waive its rights with respect to subsequent events.

   (d) **Regulations of HUD Secretary.** In many circumstances regulations issued by the Secretary will limit Lender's rights, in the case of payment defaults, to require immediate payment in full and foreclose if not paid. This Security Instrument does not authorize acceleration or foreclosure if not permitted by regulations of the Secretary.

   (e) **Mortgage Not Insured.** Borrower agrees that if this Security Instrument and the Note are not determined to be eligible for insurance under the National Housing Act within 60 days from the date hereof, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. A written statement of any authorized agent of the Secretary dated subsequent to 60 days from the date hereof, declining to insure this Security Instrument and the Note, shall be deemed conclusive proof of such ineligibility. Notwithstanding the foregoing, this option may not be exercised by Lender when the unavailability of insurance is solely due to Lender's failure to remit a mortgage insurance premium to the Secretary.

10. **Reinstatement.** Borrower has a right to be reinstated if Lender has required immediate payment in full because of Borrower's failure to pay an amount due under the Note or this Security Instrument. This right applies even after foreclosure proceedings are instituted. To reinstate the Security Instrument, Borrower shall tender in a lump sum all amounts required to bring Borrower's account current including, to the extent they are obligations of Borrower under this Security Instrument, foreclosure costs and reasonable and customary attorneys' fees and expenses properly associated with the foreclosure proceeding. Upon reinstatement by Borrower, this Security Instrument and the obligations that it secures shall remain in effect as if Lender had not required immediate payment in full. However, Lender is not required to permit reinstatement if: (i) Lender has accepted reinstatement after the commencement of foreclosure proceedings within two years immediately preceding the commencement of a current foreclosure proceeding, (ii) reinstatement will preclude foreclosure on different grounds in the future, or (iii) reinstatement will adversely affect the priority of the lien created by this Security Instrument.

11. **Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time of payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successor in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

12. **Successors and Assigns Bound; Joint and Several Liability; Co-Signers.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 9(b). Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

13. **Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

14. **Governing Law; Severability.** This Security Instrument shall be governed by Federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

15. **Borrower's Copy.** Borrower shall be given one conformed copy of the Note and of this Security Instrument.

16. **Hazardous Substances.** Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting

FHA North Carolina Deed of Trust - 4/96
Online Documents, Inc.              Page 4 of 6

LOAN #

the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substances affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

As used in this paragraph 16, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph 16, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

17. **Assignment of Rents.** Borrower unconditionally assigns and transfers to Lender all the rents and revenues of the Property. Borrower authorizes Lender or Lender's agents to collect the rents and revenues and hereby directs each tenant of the Property to pay the rents to Lender or Lender's agents. However, prior to Lender's notice to Borrower of Borrower's breach of any covenant or agreement in the Security Instrument, Borrower shall collect and receive all rents and revenues of the Property as trustee for the benefit of Lender and Borrower. This assignment of rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of breach to Borrower: (a) all rents received by Borrower shall be held by Borrower as trustee for benefit of Lender only, to be applied to the sums secured by the Security Instrument; (b) Lender shall be entitled to collect and receive all of the rents of the Property; and (c) each tenant of the Property shall pay all rents due and unpaid to Lender or Lender's agent on Lender's written demand to the tenant.

Borrower has not executed any prior assignment of the rents and has not and will not perform any act that would prevent Lender from exercising its rights under this paragraph 17.

Lender shall not be required to enter upon, take control of or maintain the Property before or after giving notice of breach to Borrower. However, Lender or a judicially appointed receiver may do so at any time there is a breach. Any application of rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of rents of the Property shall terminate when the debt secured by the Security Instrument is paid in full.

18. **Foreclosure Procedure.** If Lender requires immediate payment in full under paragraph 9, Lender may invoke the power of sale and any other remedies permitted by applicable law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this paragraph 18, including, but not limited to reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, and if it is determined in a hearing held in accordance with applicable law that Trustee can proceed to sale, Trustee shall take such action regarding notice of sale and shall give such notice to Borrower and to other persons as applicable law may require. After the time required by applicable law and after publication of the notice of sale, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, Trustee's fees of           of the gross sale price; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it. The interest rate set forth in the Note shall apply whether before or after any judgment on the indebtedness evidenced by the Note.

If the Lender's interest in this Security Instrument is held by the Secretary and the Secretary requires immediate payment in full under Paragraph 9, the Secretary may invoke the nonjudicial power of sale provided in the Single Family Mortgage Foreclosure Act of 1994 ("Act") (12 U.S.C. 3751 et seq.) by requesting a foreclosure commissioner designated under the Act to commence foreclosure and to sell the Property as provided in the Act. Nothing in the preceding sentence shall deprive the Secretary of any rights otherwise available to a Lender under this Paragraph 18 or applicable law.

19. **Release.** Upon payment of all sums secured by this Security Instrument, Lender or Trustee shall cancel this Security Instrument without charge to Borrower. If Trustee is requested to release this Security Instrument, all notes evidencing debt secured by this Security Instrument shall be surrendered to Trustee. Borrower shall pay any recordation costs.

20. **Substitute Trustee.** Lender may from time to time remove Trustee and appoint a successor trustee to any Trustee appointed hereunder by an instrument recorded in the county in which this Security Instrument is recorded. Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon Trustee herein and by applicable law.

21. **Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument. [Check applicable box(es)]

☐ Condominium Rider           ☐ Growing Equity Rider        ☐ Planned Unit Development Rider
☐ Graduated Payment Rider     ☐ Other(s) [specify]

FHA North Carolina Deed of Trust - 4/96
Online Documents, Inc.                      Page  5  of  6

EXHIBIT "A"

BEING ALL OF LOT 1 OF THE ROGER T. HELMS AND CATHY PRICE HELMS PROPERTY AS SHOWN ON PLAT RECORDED IN PLAT CABINET B, FILE 204-A, UNION COUNTY REGISTRY, REFERENCE TO WHICH IS HEREBY MADE FOR A MORE PARTICULAR DESCRIPTION.

BK 06141  PG0839

```
                    FILED ELECTRONICALLY
                       UNION COUNTY NC
                        CRYSTAL CRUMP
                    ============================
                    FILED         Dec 02, 2013
                    AT              08:37:00 AM
                    BOOK                  06141
                    START PAGE             0839
                    END PAGE               0840
                    INSTRUMENT #          40001
                    EXCISE TAX            $0.00
```

**RECORDING DOCUMENT COVER PAGE**

Return to:
Brock & Scott, PLLC
5431 Oleander Drive
Wilmington, NC 28403

Type of Document:        Assignment of Deed of Trust

Deed of Trust Grantor(s): Christie R. Newell, Timothy E. Newell, Nicholas L. Rochester Jr. and Doris C. Rochester

Reference Book: 05828

Reference Page: 0390

Submitted electronically by "Brock & Scott, PLLC-NC"
in compliance with North Carolina statutes governing recordable documents
and the terms of the submitter agreement with the Union County Register of Deeds.

File Number: ▇▇▇▇▇▇▇

BK 06141  PG0840

Mortgagor(s): Christie R. Newell, Timothy E. Newell,  Book: 05828
Nicholas L. Rochester Jr. and Doris C. Rochester    Page: 0390
MERS Phone #: 888-679-6377                          MIN #:
MERS Address: PO Box 2026
              Flint, Michigan 48501-2026

State of North Carolina, County of Union

## ASSIGNMENT OF DEED OF TRUST

For Value Received, the undersigned beneficiary of a Deed of Trust (herein Assignor) does hereby grant, sell, assign, transfer and convey, unto Pacific Union Financial, LLC. (herein Assignee), all beneficial interest under a certain Deed of Trust, dated September 17, 2012 and made and executed by Christie R. Newell, Timothy E. Newell, Nicholas L. Rochester Jr. and Doris C. Rochester grantor(s), To Michael Burns, Attorney at Law, Burns and Bela, LLP, Trustee, and given to secure payment of One Hundred Fifty Thousand Two Hundred Twenty-Eight and 0/100 dollars ($150,228.00) in favor of Mortgage Electronic Registration Systems, Inc as nominee for Wolfe Financial, Inc., its successors and assigns which Deed of Trust is of record in Book 05828 at Page 0390, in Union County, State of North Carolina.

WHEREAS, the undersigned Assignor has executed this Assignment of Deed of Trust on the 21st day of November, 2013.

Mortgage Electronic Registration Systems, Inc. as nominee for Wolfe Financial, Inc., its successors and assigns (Assignor)

Signature: _William C. Berrong_

By: _William C. Berrong_

Position: _Vice President_

Texas _____ State
Dallas _____ County

I, Yolanda Yvette Legrand, a Notary Public for Dallas County and above mentioned State, do hereby certify that William C. Berrong personally appeared before me. this day and acknowledged that he (or she) is Vice President (Title) of Mortgage Electronic Registration Systems, Inc. as nominee for Wolfe Financial, Inc., its successors and assigns, a corporation/company/entity/National Association, and that he/she, as _____ (Title), being authorized to do so, executed the foregoing on behalf of the corporation/company/entity/National Association.

Witness my hand and official seal, this the 21th day of November, 20 13.

(Official Seal)

_Yolanda Yvette_, Notary Public
My commission expires 11-23-2014, 20___.

YOLANDA YVETTE LEGRAND
My Commission Expires
November 23, 2014

File Number: